## NATIONAL LABOR RELATIONS BOARD
### v.
## AMERICAN THREAD CO.
### No. 14606.

United States Court of Appeals
Fifth Circuit.

Feb. 9, 1954.

---

**3.** See footnote 1.

382

A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Associate Gen. Counsel, Charles M. Paschal, Jr., Chief Law Officer, New Orleans, La., George J. Bott, Gen. Counsel, Samuel M. Singer, Nancy M. Sherman, Attys., National Labor Relations Board, Washington, D. C., for petitioner.

Frank A. Constangy, Marion A. Prowell, Atlanta, Ga., for respondent.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

This proceeding arises out of efforts of the union to organize the employees of respondent, culminating in an election which went by a large majority against the union.

Thereafter, Textile Workers Union of America, which will be called "the union", having lost the consent election, took action to have it set aside and in addition filed an unfair labor practice charge against the company, hereafter called "respondent". The Labor Board, sponsoring the charges, filed the complaint which led to the hearing, the findings, and the order under review here.

The complaint alleged in substance that in the months of August and September, 1950, the respondent, in violation of the act, (1) interrogated its employees concerning their union activities, (2) threatened employees with discharge, undesirable job transfers, surveillance, and other economic reprisals because of their concerted activities on behalf of the union, (3) discriminated against union members and sympathizers by the disparate enforcement of plant rules in order to discourage membership in a labor organization, and (4) discriminatorily discharged William Robinson because of his membership in the union and his activities in its behalf.

The respondent filing an answer which joined issue with the allegations of the complaint, the matter was referred to, and a full hearing was had before, an examiner on both the election contest and the unfair labor practice charges, and, at its conclusion, the examiner filed a rather lengthy intermediate report with a recommended order. Setting out in the report in considerable detail things written and said by the respondent in the purported exercise, under Section 8(c) of the act, 29 U.S.C.A. § 151 et seq., of its right of free speech and his conclusions from the evidence as to what had been said and done in and about the plant before, during, and after the election, the examiner, in his concluding findings, found that letters, booklets and exhibits addressed to the employees in opposition to the union were simply the expression of respondent's view unattended with threats of reprisal or promise of benefit, and were, therefore, protected activities and not violations of the act.

He found, though, that in permitting supervisors to personally distribute the literature in the plant, indeed in permitting the distribution of both union and anti-union literature, the respondent was guilty of discrimination when it warned Stephens not to distribute literature, and discharged Billy Robinson for doing so. In other words, he found that the respondent was guilty of disparate

enforcement of its rule about distributing literature in the plant and that this was an unfair labor practice.

He found, too, that, in interrogating employees about their membership in the union, respondent was guilty of such practices, and that it was guilty of such practices, too, in connection with its treatment of some of its employees in connection with their attendance at Senate hearings in Washington.

Finally, he found, in respect of a noisy and uproarious, but good tempered, demonstration at the plant on the day of the election, in which cuspidor hats were worn by the employees, with mottoes such as "Vote No" and "Victory" on most of them, though some of them had "Yes", and in the spirit of the occasion a representative of the board,[1] assisting at the election, wore one on which the words "Vote No" had been erased, that it was an unfair labor practice to permit such jollity and prankishness when most of the hats carried "No", meaning that most of the demonstrators were anti-union.

He, therefore, for the reasons that he gave, recommended that the election, which had gone against the union, be set aside and made recommendations for remedying the unfair labor practices he had found.

The Board, reviewing and affirming the rulings of the trial examiner and adopting his findings, conclusions, and recommendations, is here by petition, brief, and oral argument, seeking enforcement of its order entered pursuant thereto.

The respondent, here by answer and brief, resists enforcement, insisting that the findings are not supported by the record and the order should not be enforced.

We shall not undertake to gather the evidence together to sift it grain by grain as Board and respondent have purported to do in their briefs and arguments. It will suffice to say: that we have carefully considered the record, checking the findings of the examiner and the briefs and arguments against the appendices and record; and that we have reached the conclusion that, while some of the examiner's findings of unfair labor practices are supported by the evidence and some of his recommendations as adopted and made the order of the Board should be enforced, some of his findings are not so supported, and some provisions of the order should not, and will not be enforced.

■ Specifically we are in no doubt that the evidence completely fails to support the finding that William Robinson was discharged because of his membership in, and activity on behalf of, the union. On the contrary, it shows without contradiction or dispute that he was discharged for open and continuous insubordination and disobedience of orders, and the order requiring his reinstatement with back pay is itself an unfair labor practice and as such is prohibited by Section 10(c) of the act which provides, "No order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged * * * for cause * * *", 29 U.S.C.A. § 160(c).

The order of the Board will, therefore, be modified by striking from it paragraphs 1(a) and 2(a) and (b), based upon the finding that Robinson's discharge was an unfair labor practice.

■■ Further, the record leaves us in no doubt that the hat episode was not an unfair labor practice, and that there was no such disparate enforcement of the respondent's plant rules as to constitute an unfair labor practice. The order of the Board will, therefore, be further modified by striking from it all

1. As to this incident, the examiner said:
"The pasteboard hats were much in evidence at the polls. The festive spirit was so contagious that even a representative of the Board, assisting in the conduct of the election, was seen wearing a hat on which the words 'Vote No' had been erased. When a union adherent objected, he removed the hat with some embarrassment."

of paragraph 1(b) beginning with "disparately" and continuing to the end.

As modified in accordance with the directions herein, the order will be enforced. A decree drawn in accordance herewith may, therefore, be presented for entry.